UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   8/11/15
```

-----------------------------------------------------------X
                                     :

LUIS VASQUEZ,                   :

                      Plaintiff,   :

                                       :             13 Civ. 9127 (LGS)

          -against-           :

                                       :          OPINION & ORDER

C.O. WILLIAMS, et al.,        :

                    Defendants.  :

                                       :

-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Pro se Plaintiff Luis Vasquez, an inmate incarcerated at Rikers Island, brings suit pursuant to 42 U.S.C. § 1983 against three Correction Officers, alleging that they subject him to an unconstitutional strip search in the view of two cameras every time he goes to the Bronx Supreme Court for his court appearances.[1]  Plaintiff seeks money damages and injunctive relief.  Defendants move for summary judgment.  For the reasons below, Defendants' motion is denied.

## I.    BACKGROUND

      The facts are taken from Defendants' statement pursuant to Local Rule 56.1, Plaintiff's deposition testimony, Plaintiff's submissions in opposition to the motion and the exhibits submitted in connection with the motion.[2]  The facts are either undisputed or construed in the light most favorable to Plaintiff.

---

[1]    In a declaration in opposition to summary judgment, Plaintiff for the first time asserts claims for denial of access to prison activities and reasonable accommodations for his disability without any other evidence to support such a claim.  These allegations are disregarded because a party may not amend the complaint by adding a new claim in opposition to summary judgment.  *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

[2]    Plaintiff did not respond to every paragraph of Defendants' Local Rule 56.1 Statement as required by the Local Rules.  However, given his pro se status and because his submissions clearly attempt to identify factual disputes, the failure to respond to Defendants' Local Rule 56.1 Statement is excused.  Where appropriate, the facts raised by Plaintiff in his opposition are construed as objections to Defendants' Statement.  However, any facts not contested are deemed admitted.  Plaintiff's factual assertions, whether in his declaration or in his submission, are assumed to be true, but only for purposes of the present motion.

Plaintiff, who is wheel-chair bound, is currently serving a ten-year term of imprisonment at Rikers Island for a 2012 conviction on drug charges.  Although not explicitly stated in any of the motion papers, it is assumed that all three Defendants were employed by the Department of Corrections.  Defendants Delgado and Williams have the title of "Correction Officer" and, according to Plaintiff's testimony, Captain Jemmott was their supervisor.

By a notice of authorization dated October 6, 2012, the Department of Corrections (the "DOC") placed Plaintiff on "Red ID" status for being "found in possession of a weapon during . . . incarceration."  The weapon in this case was the razor from a razor blade.  Although neither party explained what Red I.D. status means, according to the Second Circuit:

> [t]he Red I.D. policy is designed to prevent violence when inmates are moved outside of Department jails. . . . Inmates who have been found to possess a weapon while in the Department's custody are assigned Red I.D. status.  A Red I.D. detainee must wear a red identification card which enables Department staff to determine that the detainee is subject to special attention during jail searches and strip frisks.  When Red I.D. detainees are moved anywhere outside their facility, their hands are placed in black tubes termed "security mitts."  Although the exact types of restraints apparently vary, typically the cuffs are attached to a waist chain and the hands are cuffed behind the back facing outwards.  The detainee may also be placed in leg irons.

*Benjamin v. Fraser*, 264 F.3d 175, 181 (2d Cir. 2001).

Plaintiff appeared at the Bronx Supreme Court on many occasions between November 2012, and July 2014.  Before each court visit, Plaintiff was subjected to a visual body cavity search at Rikers Island.  He was then handcuffed with a waist chain, leg chain and mitts.  So shackled, he was placed on a bus with other inmates where they were all subject to constant supervision.  Once the bus reached the Bronx Supreme Court, the inmates were transferred, still shackled and restrained, to a waiting room.  Construing all facts in Plaintiff's favor, it is assumed that the other inmates were restrained.  Defendants then took Plaintiff to a room with two cameras

for a second visual cavity search within one hour of the search at Rikers Island.[3]  When asked at

his deposition, Plaintiff testified that he believed he was searched at the Bronx Supreme Court

because of his Red I.D. status.  He also stated that he was not strip searched at the Bronx

Supreme Court before he was placed on Red I.D. status.

On each occasion that Defendants conducted a visual body cavity search, they required

Plaintiff to undress completely, lift his penis, and display his anus and thigh.  Plaintiff testified

that the following "procedure" occurred once he reached the Bronx Supreme Court,

> The procedure in the court is you get into the bus one by one, person by person, they
> put you in one room. If the room is packed, they ask you to stay in the bus. When I
> get to that room, I'm going to be there for five or ten minutes at the entrance. From
> there, one of the guards -- [Defendant] Williams or [Defendant] Delgado -- are
> following the commands of [Defendant] Captain Jemmott and they look for you and
> ask you to go.  They ask you to get your sneakers off and to sit down in the chair.
> They ask you to get inside the room . . . . They search your ass, as I told you,
> completely nude.

No Defendant or other officer ever touched Plaintiff during these searches.  At his deposition,

Plaintiff explained

> [Defendants] are not supposed to search me because, when we leave here [, i.e.,
> Rikers Island], we are already searched then.  There are machines, they screen
> you for metal detection.  There is no reason to have you in the room and there is
> not a reason to ask you to undress and to show, open your buttocks, even though
> there is a room that is recorded.

After July 2014, on his last three visits to the Bronx Supreme Court, Plaintiff was not asked to

remove his underwear.

---

[3]     Defense counsel, in support of this summary judgment motion, submitted a declaration
stating "[u]pon information and belief" that the recordings from the relevant cameras cannot be
accessed at the Bronx Supreme Court, and they are stored at the Operations Security Intelligence
Unit at Rikers Island, where they may be accessed only with the approval of the Chief of the
DOC.  Plaintiff correctly objects that Defendants have failed to produce "admissible evidence" as
required by Rule 56(c)(2) because Defendants' counsel does not have personal knowledge as to
the relevant facts and is not competent to testify to the same.

In a grievance form dated September 1, 2013, Plaintiff complained of being "strip[]
searched in a room where there's two (2) camera[]s which . . . [is] a violation of my
C[onstitutional] Rights" and asked that the "Officers and Captain be reprimanded."  In response,
the DOC's grievance procedure program informed him that "it is not under [its] purview . . . to
reprimand staff."  Plaintiff appealed to the DOC but did not receive a response.  Plaintiff has not
pursued the grievance procedure further.

## II.    LEGAL STANDARD

The standard for summary judgment is well established.  Summary judgment is
appropriate where the record before the Court establishes that there is no "genuine dispute as to
any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury
could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,
248 (1986).  Courts must construe the evidence in the light most favorable to the nonmoving
party and must draw all reasonable inferences in the nonmoving party's favor.  *See id.* at 255.  In
addition, when, as here, a party appears pro se, courts are required to construe broadly pro se
submissions and interpret them "to raise the strongest arguments that they suggest."  *Graham v.
Henderson,* 89 F.3d 75, 79 (2d Cir. 1996).

## III.   DISCUSSION

Plaintiff's claim in the Second Amended Complaint is construed as a single cause of
action alleging an unreasonable search in violation of the Fourteenth Amendment and § 1983
based on the practice of strip searching him each time he appears at the Bronx County
Courthouse and recording or transmitting the search on two cameras.  Defendants raise three
arguments in support of their motion for summary judgment.  First, they argue that Plaintiff failed

to exhaust administrative remedies.  Second, they argue that Plaintiff's strip-search claim fails as

a matter of law.  Third, they argue that, in any event, they are entitled to qualified immunity.  The

first argument is rejected.  Disputes of material facts preclude summary judgment on the

remaining two issues.

### A.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (the "PLRA") provides that "[n]o action shall be

brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  As initial matter, it is unclear

whether the PLRA's exhaustion requirement -- limited by its explicit terms to "prison conditions"

-- applies since the relevant incidents occurred outside of the prison.  *See, e.g.*, *Porter v. Nussle*,

534 U.S. 516, 532 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate

suits about *prison life*" (emphasis added)); *Witzke v. Femal*, 376 F.3d 744, 752 (7th Cir. 2004)

("[T]he obvious limit to the plain wording of the term 'prison conditions' is that only complaints

relating to conditions within a prison or correctional facility are subject to the exhaustion

requirements."); *Borges v. Adm'r For Strong Mem'l Hosp.*, No. 99 Civ. 6351FE, 2002 WL

31194558, at *3 (W.D.N.Y. Sept. 30, 2002) ("[D]efendants have not cited any case which held

that 'prison conditions' extend beyond the prison walls and this Court is hesitant to read such a

requirement into the statute.").  The Second Circuit recently declined to reach the question.  *See*

*Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 61 (2d Cir. 2015) (declining to reach the

issue of whether PLRA exhaustion requirements applied to suit by inmate for excessive force

claims arising out of incident at a court house).  Because neither party has briefed the issue and

the ultimate outcome on this motion would remain unchanged whether or not the exhaustion

requirement applies, this Opinion assumes solely for purposes of argument that the exhaustion requirement applies.

Defendants have failed to show that administrative remedies subject to the exhaustion requirement were available to Plaintiff in this case.  "To be available under the PLRA, a remedy must afford the possibility of some relief for the action complained of."  *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (internal quotation marks omitted).  Because "failure to exhaust is an affirmative defense under the PLRA," *Jones v. Bock*, 549 U.S. 199, 216 (2007), Defendants "bear the initial burden of establishing[] by pointing to legally sufficient sources, such as statutes, regulations, or grievance procedures, that a grievance procedure exists and applies to the underlying dispute," *Hubbs*, 788 F.3d at 59 (internal quotation marks and alterations omitted).  If Defendants successfully make an initial showing of availability, a court may nonetheless conclude that administrative remedies are unavailable "if the plaintiff can demonstrate that other factors -- for example, threats from correction officers -- rendered a nominally available procedure unavailable as a matter of law."  *Id.*

Here, Defendants fail at the first step because they have not made an initial showing that any administrative remedies apply to the underlying dispute regarding strip searches at the Bronx Supreme Court.  Defendants contend that the Inmate Grievance and Request Program (the "IGRP") promulgated by the DOC was available to Plaintiff.[4]  The entirety of Defendants' argument in support of this conclusion reads: "As set forth in the IGRP, '[a]ny inmate who is directly and personally affected by an issue, condition, practice, or action relating to the inmate's confinement' may file a grievance.  *See* IGRP § II(A).  Thus, the issues plaintiff raises here are

---

[4]     The Court takes judicial notice of the IGRP as courts in this District routinely do.  *See, e.g.*, *Seymore v. City of New York*, No. 12 Civ. 6870, 2014 WL 1259563, at *3 (S.D.N.Y. Mar. 26, 2014); *Johnson v. Agros*, No. 10 Civ. 8312, 2012 WL 3564028, at *4 n.2 (S.D.N.Y. Aug. 20, 2012) (collecting cases).

clearly covered by the IGRP."  Not so.  Nothing in the IGRP indicates whether it provides a

grievance procedure for activities that take place outside the ordinary place of confinement.

Defendants submit nothing to sustain their burden of showing that the IGRP does provide a

procedure to address the circumstances of this case.  The Second Circuit has explained that

"vague and conclusory statements" in an affidavit by a grievance process coordinator are not

"sufficient to meet defendant's burden" of demonstrating the availability of administrative

procedures.  *Hubbs*, 788 F.3d at 61.  Similarly, vague and conclusory assertions in their

memorandum of law fail to satisfy Defendants' burden here.  Plaintiff's alleged failure to exhaust

administrative remedies does not bar this suit.

### B.  Strip Search Claim

Plaintiff's strip search claim does not fail as a matter of law.  "[C]orrectional officials

must be permitted to devise reasonable search policies to detect and deter the possession of

contraband in their facilities."  *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132

S. Ct. 1510, 1517 (2012).  To determine whether a search is reasonable, courts must balance the

need to conduct the search against the invasion of an inmate's personal rights.  *See Bell v.

Wolfish,* 441 U.S. 520, 558 (1979).  In particular, "[c]ourts must consider the scope of the

particular intrusion, the manner in which it is conducted, the justification for initiating it, and the

place in which it is conducted."  *Id*. at 559.  Based on this analysis, *Wolfish* concluded that a

visual search of an inmate's body cavities does not violate the Fourth Amendment where done

with the aim of discovering and deterring contraband smuggling.  *Id.*  The Supreme Court has

since "confirmed the importance of deference to correctional officials" and held that "a regulation

impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to a

legitimate penological interest.'" *Florence*, 132 S. Ct. at 1515 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

As is well established, "[q]ualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Drimal v. Tai*, 786 F.3d 219, 224-25 (2d Cir. 2015). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (internal quotation marks and alterations omitted).

Plaintiff challenges the strip searches conducted at the Bronx Supreme Court.[5]  First, he objects to the presence of video cameras in the room where he was strip searched.  Second, he implicitly argues that visual body-cavity searches at the Bronx Supreme Court were not related to any penological interest because they followed shortly after another strip search at Rikers Island, and Plaintiff was constantly supervised and restrained in the interim.

The Second Circuit has recently affirmed that "a strip-search policy" is "not reasonably related to legitimate penological interests" where inmates "were strip searched when there was no

---

[5]      Plaintiff correctly refrains from challenging the strip searches at Rikers Island before he is transported to the Bronx Supreme Court.  These searches are constitutional as reasonably related to the legitimate security concerns of safety and smuggling of contraband.  *See, e.g.*, *Montgomery v. Hall*, No. 11 Civ. 4645, 2013 WL 1982920, at *4 (S.D.N.Y. May 15, 2013) ("Requiring detainees at [a] [correctional facility] to submit to a strip search prior to departing the facility for a court appearance serves the legitimate penological interest of preventing the smuggling of contraband into or out of the [facility].)"  (internal quotation marks and citation omitted)); *Israel v. City of New York*, No. 11 Civ. 7726, 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012) (finding that requirement that inmates be searched upon entering and existing a correctional facility serves "the legitimate interest of preventing the smuggling of contraband"); *Myers v. City of New York*, No. 11 Civ. 8525, 2012 WL 3776707, at *9 (S.D.N.Y. Aug. 29, 2012) (same).

8

possibility that they could have obtained contraband." *Turkmen v. Hasty*, 789 F.3d 218, 260 (2d Cir. 2015). In *Turkmen*, the plaintiffs were detained at Brooklyn's Metropolitan Detention Center on immigration charges after the September 11 terrorist attacks "even though they were unquestionably never involved in terrorist activity." *Id.* at 224. During their detention, they were strip searched every time they entered and left their cell despite being continuously "escorted in shackles and under continuous guard." *Id.* at 260. The court concluded that based on these facts, the plaintiffs had stated a plausible *Bivens* Fourth Amendment claim against two individual defendants who approved and implemented such a strip search policy. *Id.* The court further held that the individual defendants were not entitled to qualified immunity because by September 11, 2001, "it was clearly established that even the standard most favorable to prison officials required that strip and body-cavity searches be rationally related to legitimate government purposes." *Id.* at 261 (quoting *Iqbal v. Hasty*, 490 F.3d 143, 172 (2d Cir. 2007) *rev'd and remanded on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Hodges v. Stanley*, 712 F.2d 34, 35 (2d Cir. 1983) (holding a second strip search, shortly after the first, serves no legitimate purpose if the plaintiff "had been under continuous escort" and "there was no possibility that [the plaintiff] could have obtained and concealed contraband"); *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (holding second strip search conducted shortly after first is unrelated to any legitimate interest because the prisoner did not have any opportunity to acquire contraband while " under constant supervision by Defendants from the time of the first strip search to the second").

Similarly in this case, the practice of conducting a second strip search at the Bronx Supreme Court even though (1) Plaintiff had been strip searched at Rikers Island prior to leaving for the courthouse and (2) was transported under constant supervision in handcuffs, a waist chain,

9

leg chains, and "mitts," preventing any opportunity for the exchange of contraband in the interim, violates the Fourth Amendment.  Further, construing all facts in Plaintiff's favor, it would be objectively unreasonable for a corrections officer in Defendants' position to conduct the second strip search because such an officer knows or should know the restrictive conditions under which a Red I.D. prisoner like Plaintiff is transferred to the Bronx Supreme Court from Rikers Island. In the absence of any legitimate penological interest, the second search violated Plaintiff's right to be free from unreasonable searches.  *al-Kidd*, 131 S. Ct. at 2082 (unreasonable searches subject to an objective inquiry).  In addition, as in *Turkmen*, Defendants are not entitled to qualified immunity because the right against such a second search was clearly established at the time of Plaintiff's visits to the courthouse.

Defendants argue that the second strip search here is reasonable because Defendants, who are posted at the Bronx Supreme Court and not at Rikers Island, could not know with certainty Plaintiff did not have access to contraband because they did not personally conduct the first search.  Defendants also suggest that because Plaintiff was transported to the Bronx Supreme Court with other inmates in a bus, "it cannot be said that it would have been impossible for plaintiff to obtain and conceal any contraband."  Both arguments are rejected.

According to Plaintiff, between searches, he was restrained in a manner that prevented any kind of holding or grabbing.  He was restrained in this manner when he was put on the bus and when Defendants "received him."  He was constantly supervised before getting on the bus, while on the bus and until he was "delivered to" Defendants at the Bronx Supreme Court. Construing the facts in Plaintiff's favor and in the absence of contrary evidence in the record, it is assumed that the other inmates on the bus also were restrained.  Under these facts, which must be credited on this motion, a reasonable jury could conclude that there was no possibility of Plaintiff

10

gaining access to any contraband and that the second visual body cavity search was untethered from any legitimate penological interest.

At trial, the open factual issues relevant to whether the policy of the second strip search was reasonable and whether Defendants are entitled to qualified immunity, include, but are not limited to:

1. Was Plaintiff under constant supervision between the two searches?  If not, when was he supervised and when was he not?

2. What were the restraints Plaintiff was under?  Did the restraints permit him to move his hands, and if so, to what extent?

3. What restraints were the other inmates on the bus subject to?

It is also assumed for purposes of this motion, in the absence of contrary evidence, that DOC officers, including Defendants, were aware of the initial search of, the constant supervision of, and the physical restraints on, inmates who were transported to the Bronx Supreme Court.  At trial, for purposes of qualified immunity, an open factual issue to be determined by the jury (although qualified immunity is ultimately a question for the Court) is whether this assumption is true.

As to Plaintiff's objection to the two cameras in the search room, one court in this District recently explained that without "substantial additional allegations . . . that the searches were unreasonable in other ways or were intended to harass or embarrass" a complainant, "the presence of a camera at a strip search does not amount to a constitutional violation." *Peek v. City of New York*, 13 Civ. 4488, 2014 WL 4160229 at *2 (S.D.N.Y. Aug. 18, 2014) (collecting cases). Here, additional allegations raise the question of whether a second strip search was necessary at all, much less whether it needed to be transmitted or recorded via camera.  Accordingly,

Plaintiff's claim that he was repeatedly subjected to unconstitutional strip searches at the Bronx Supreme Court is not dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED.

The Clerk of Court is directed to close the motion at Dkt. No. 39, and to mail a copy of this Order to the pro se Plaintiff.  A separate order scheduling dates for trial will follow.

SO ORDERED.

Dated: August 11, 2015
      New York, New York


                                        LORNA G. SCHOFIELD
                                     UNITED STATES DISTRICT JUDGE

12